# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**MEREDITH CLARK SHACHOY,**<br><br>　　　　　　　Debtor | Chapter 11<br>Case No. 19-10756-FJB |

**MEMORANDUM OF DECISION ON**
**DEBTOR'S RENEWED MOTION TO AUTHORIZE POSTPETITION BORROWING**

This case is before the Court on the Renewed Motion by Debtor Meredith Clark Shachoy for Order (I) Authorizing the Debtor to Obtain Post-petition Financing and (ii) Granting Junior Security Interests (the "Renewed Motion"). By this motion, Meredith Clark Shachoy (the "Debtor") seeks authority to engage in post-petition borrowing from her husband, Christopher Schchoy ("Christopher") under 11 U.S.C. § 364. At a hearing on an earlier iteration of this motion (the "First Motion"), the Debtor indicated that she would be willing to amend the borrowing terms to accommodate certain objections. On August 5, 2019, the Court accordingly denied that motion without prejudice. As was the First Motion, the Renewed Motion has been objected to by the United States Trustee and by a group of creditors related to George H. Conrades (the "Conrades Parties"). The Court held a hearing on the Renewed Motion on October 1, 2019.

Some background is needed to understand what the motion asks and seeks approval of. According to the Debtor's schedules, she owns the following assets:

- a primary residence in Cambridge, Massachusetts, valued at $4 million and subject to (i) a first position mortgage in favor of Cambridge Savings Bank in the amount of $2,138,899, on which debt her husband is a co-obligor, (ii) an attachment in the amount of $5 million,

- securing a claim in litigation by the Conrades Parties that the Debtor wholly disputes, and (iii) a claim of homestead exemption in the amount $500,000;

- a vacation home at 18 South Street, Marion, Massachusetts, valued at $1 million and subject to a first position mortgage in favor of Brookline Bank in the amount of $899,129 and then to the Conrades Parties attachment;

- with Christopher in a tenancy by the entirety, a second vacation home in Marion, Massachusetts, this one at 16 South Street, valued at $760,000, her share being $380,000, which also is subject to a mortgage that apparently serves as additional security for the aforementioned $899,129 obligation to Brookline Bank;

- a third vacation home, at 119 Southside Road, in Bristol, Maine, valued at $360,000 and subject to a mortgage in favor of Bath Savings Institution in the amount of $311,191.00;

- a boat house at Bristol, Maine, valued at $260,000 and apparently unencumbered;

- jewelry valued in the aggregate at $125,000, subject to a claim of exemption in the amount of $1,225;

- a 10 percent equity interest in Longfellow Venture Partners 1 LLC, valued at between $3.6 and $9.8 million;

- a counterclaim against the Conrades Parties, valued at between $3.6 and $9.8 million; and

- a counterclaim against Karen Ballinger, valued at $10,000,000.

The debt she seeks to address in this case falls into six categories. The first is comprised of the legal and other administrative expenses she has and will incur during this chapter 11 case; the total of these is yet to be determined, but her bankruptcy counsel has already filed an interim fee application in which the firm states that it has accrued fees in the first eight months of this case totaling $394,337.00. The second is comprised of the mortgages identified above on her various homes. The third is comprised of some $250,000 in nonpriority and undisputed unsecured debt on credit cards and revolving lines of

credit.  The fourth is comprised of the disputed claim of the Conrades Parties, presently in litigation in a Massachusetts Superior Court (where the validity and amount of the claim will be determined), and which is partially secured by attachments as indicated above, with potentially a large unsecured remainder. The fifth is the unsecured claim, also in litigation, of Karen Ballinger, which appears to be covered by liability insurance.  And the sixth is at least $60,000 in prepetition unsecured loan obligations to Christopher.

According to her schedules of income and expenses (Schedules I and J), the Debtor has no income whatsoever, and neither does her husband.  Nonetheless, she has monthly living expenses of almost $25,000, including mortgage payments on the Cambridge, Marion, and Maine properties. Christopher is a co-obligor on the mortgage on the Cambridge property.

The Renewed Motion does indeed offer some changes with respect to the terms of the borrowing. The Debtor attaches a revised term sheet that outlines the proposed "post-petition line of credit" whereby she would borrow up to $250,000 from Christopher. The proceeds would be used, in the Debtor's discretion, for one or more of the following purposes (and no others): (a) to pay the monthly debt service, taxes, assessments, and water and sewer charges on her properties in Cambridge, Massachusetts and in Maine; (b) to pay fees and expenses of court-approved professionals employed by the Debtor during the chapter 11 case, but only as approved by the Court; and (c) to pay bankruptcy fees due pursuant to 28 U.S.C. § 1930. The loan would be subject to a 6% rate of interest and would be secured by (a) a mortgage junior to all existing liens and any existing or future real estate taxes on the Cambridge and Maine properties and (b) a security interest in all jewelry owned by her, wherever located, including, but not limited to, the jewelry referenced in her "Schedules or on that certain insurance rider provided post-petition to the U.S. Trustee, up to the extent of $125,000 in value."  Also, the funds advanced under this proposed facility would be considered administrative expenses under 11 U.S.C. § 503(b).

Prepetition, the Debtor, who currently has no income, borrowed from Christopher to meet her debt servicing requirements and her living expenses. Those borrowings were unsecured and helped provide for the Debtor and the other members of her and Christopher's family.

The United States Trustee ("UST") and the Conrades Parties, not satisfied with the changes and concessions that the Debtor and Christopher have made, have objected to the Renewed Motion. The U.S. Trustee argues that the borrowing is not a sound exercise of the Debtor's business judgment, as estate fiduciary, because it advances Christopher's interests at the expense of the estate and creditors. He argues that Christopher, an insider, is not entitled to the inducements offered in the proposed borrowing because (a) as the Debtor's husband and the father of their children, he paid the same expenses prepetition without any additional inducements; (b) he should not have a lien on the jewelry because it is not clear who owns it; (c) he has an obligation to pay the expenses identified in that he is a co-obligor on the mortgage on the Cambridge property; and (d) his company is a defendant in the Conrades litigation, giving him incentive to defend that lawsuit. Finally, the U.S. Trustee argues that the Debtor has access to substantial equity in her real estate holdings, which equity should be used to access any needed liquidity before resort to the borrowing outlined in the motion.

The second objection is from the Conrades Parties, who are in litigation with the Debtor in state court, where they have alleged that she committed certain intentional business torts resulting in substantial damages; the Debtor has filed counterclaims in that litigation (the "Conrades Litigation"). That case is scheduled for a jury trial in January 2020. The Conrades Parties assert a claim in this case for the liability they seek to establish in that litigation. Their claim is secured in part by a prejudgment attachment, but the Debtor has moved to avoid that lien under § 522(f), and that motion remains pending.  The Debtor disputes liability and the claim as a whole, but for purposes of this motion, the court must assume that the Conrades Parties have a substantial unsecured claim in the case. The

4

Conrades Parties repeat the U.S. Trustee's objections to the Renewed Motion and renew, as to the present motion, the objections they articulated to the borrowing as proposed in the First Motion.

The Debtor seeks authority to incur debt under 11 U.S.C. § 364(b) and (c). Under § 364(b), the court may authorize a debtor-in-possession to obtain unsecured credit out of the ordinary course of business that is allowable as an administrative expense under 11 U.S.C. § 503(b)(1). 11 U.S.C. § 364(b) ("The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."). To establish its entitlement to such authorization, the debtor-in-possession—vested by 11 U.S.C. § 1107 with the rights and powers of a trustee under § 364—bears the burden of establishing that (a) the borrowing facility is a sound exercise of the debtor-in-possession's business judgment as estate fiduciary and (b) that the resulting debt would constitute an administrative expense under 11 U.S.C. § 503(b)(1); that is, it must constitute an actual and necessary cost or expense of preserving the estate. Because Christopher is an insider, 11 U.S.C. § 101(31)(A), the loan facility is subject to stricter scrutiny than would a loan with a non-insider.

The motion also seeks an order under 11 U.S.C. § 364(c)(2) and (3) authorizing the debtor-in-possession's obtaining of the same credit secured by junior liens on the Cambridge and Maine properties and by a first lien on the Debtor's jewelry, which is currently unencumbered. Post-petition borrowing is often permissible to preserve the debtor's ability to reorganize and to propose a plan of reorganization. But it comes at an expense and with some risk. The risk in this case is borne by the unsecured creditors who, including at least $250,000 in undisputed debt and several million more in the unsecured portion of the disputed claim of the Conrades Parties, which for present purpose I must assume is valid, as must the estate fiduciary. It is not clear that the estate has value sufficient to pay these claims in full. The Debtor's scheduled counterclaims are of doubtful value, as are her scheduled equity interests. The surest value in the estate is in her real estate, the equity in which

(especially after subtraction of Debtor's homestead exemption) is insufficient to cover the existing claims. What the Debtor proposes is to borrow from Christopher to pay her litigation expenses and the carrying costs on her residence and vacation properties. In return, Christopher will receive a lien on her "free" assets, which would otherwise inure to the benefit of her unsecured creditors. By this facility, she would remove equity from the estate, reduce dollar for dollar the equity available to unsecured creditors in the event of a liquidation, and, on the same dollar for dollar basis, reduce the amount she would need to pay them in order to satisfy the requirement of § 1129(a) in order to obtain confirmation of a chapter 11 plan. She is proposing to pay for this borrowing not with surplus monies but with the creditors' funds.

This facility would not enable the Debtor to generate funds to repay the borrowing. She has no income, and this facility is not designed to enable her to generate income that will pay for the borrowing. There is no proposed mechanism of repayment of the monies borrowed or the interest. She would pay for this borrowing by transferring unencumbered value to her husband in the form of mortgages on real estate and a security interest in the jewelry. The security interests are themselves the payment. Each borrowed dollar, and each dollar of interest that accrues on it, will deplete the estate and inure to the benefit of the Debtor's husband.

It is true that, except for the interest that accrues on the loan, the proposed borrowing would simply replace one set of estate obligations with another. The attorney's fees and U.S. Trustee's fees, until paid, will constitute administrative expenses, which must be paid in full before unsecured creditors receive their first dollar. And the payments on mortgages on estate properties will, to the extent that the payments are of interest and not principal, prevent the growth of the interest component of those obligations.

These facts, however, make clear that the estate is wasting and administratively insolvent. The borrowing will do nothing to abate that (rather will aggravate it by 6 percent per year). This in turn

6

raises questions about whether this case appropriately remains in chapter 11.  Moreover, the amount of the present facility, $250,000, is inadequate to the needs the Debtor purports to address.  Already, Debtor's bankruptcy counsel's fees aggregate nearly $400,000, without consideration of the fees of special counsel hired for the state court proceedings.  Monthly payments on the mortgage on the Cambridge home exceed $10,000, and real estate taxes on that property are another $2500. And then there are mortgage and tax obligations on the vacation homes.  The present facility is not nearly adequate to the need and represents only the first of what would likely be many returns to this trough.

In a chapter 11 case, a debtor in possession is vested by the Bankruptcy Code with various rights and powers of a trustee and, as such, acts as a fiduciary of the estate and its creditors.  11 U.S.C. § 1107(a). Keeping those duties in mind, the debtor must demonstrate that she is properly exercising her sound business judgment. Normally, the Court will defer to the business judgment of a trustee and examine it only for abuse of discretion.  However, the level of scrutiny is heightened here for two reasons: first because the entity exercising the powers of a trustee is also the debtor in the case, having interests distinct from and at odds with those of the estate, and second because the transaction in question is with an insider, the debtor's husband.

The Debtor has not met her burden here of showing that the proposed borrowing is in the best interest of the estate.  First, Christopher is not entitled to the protections offered to him in the proposed facility because he himself is already obligated to pay the mortgage on the Cambridge home.  It is the home he provides for his family. He benefits personally from the payments in servicing that mortgage, and the proposed facility gives him credit for contributions he is already obligated by make under a loan agreement with the mortgagee, if not also by marital and family ties. (Notably, though Christopher insists now on payment for the amounts he would advance for the benefit of himself and his family, and the Debtor sees fit to pay him with estate equity, the Debtor, on behalf of the estate, does not insist

that he reimburse the estate for the value of the use and occupancy by Christopher and his family of the $4 million residence and three vacation homes.)

Second, Christopher's company is a defendant in the Conrades Litigation. He has a personal interest in ensuring that the Debtor is well-defended in that case because a jury verdict against her would negatively impact him and his company. The estate's incurrence of debt to fund that litigation—the facility would permit the Debtor to expend the borrowed funds on fees incurred by the estate in that litigation—would amount to siphoning of estate funds to serve an insider's interest.

Third, though the Debtor frames this loan as an attempt to adequately secure the first-position mortgagees on each of her properties, the loan clearly does not serve that purpose. At least by the Debtor's numbers, each mortgagee is already well-protected by a large equity cushion, and not one of them has moved for adequate protection or relief from the automatic stay for lack of adequate protection (or any cause).  In addition, nothing about the borrowing would obligate the Debtor to expend the borrowed monies for that purpose. Debtor's counsel recently indicated that if his firm's interim fee application were granted—conveniently the application is in the amount of loan facility—the entire sum would be paid to counsel.

Fourth, though the Debtor further frames this loan as an attempt to protect the estate from erosion, it does nothing of the sort. It would merely replace one kind of debt with another, and add six percent a year to the cost.

Fifth, the loan proceeds might be expended for nothing other than to service the mortgage and tax debt on the Cambridge residence.  The Debtor has claimed $500,000 of her interest in that residence as exempt; no portion of the value of that property is unencumbered; and the Debtor clearly intends to retain that property—notwithstanding its absurd cost—in any reorganization she might propose. The servicing of debt on that property would serve only the interests of the Debtor and Christopher and foist the cost entirely on unsecured creditors.

Lastly, for all the above reasons, I am satisfied that the facility and the present motion have not been proposed in a good-faith exercise of a fiduciary's discretion to protect the estate. Certainly they do not serve that purpose. By transparent intent and design, they serve the interest of the Debtor and her husband at the expense of the estate and especially of the unsecured creditors.

For all these reasons, the Renewed Motion will be denied.

Date: December 30, 2019     _____
                             Frank J. Bailey
                             United States Bankruptcy Judge